JAMES A. WISNER v. WILLIAM N. BROWN ET AL.

*Notice of sale of bankrupt's real estate by assignee.*

50    553
s15NW 901
a122US 214
a30L.ed1205
a7SC 1156

Notice must be given to adverse claimants before an assignee in bankruptcy can make a valid sale of real property as belonging to the bankrupt's estate. U. S. Rev. Stat. § 5063.

The power of an assignee in bankruptcy to sell and convey the bankrupt's estate depends wholly upon statute, and a sale in any other manner than as therein prescribed would be a nullity.

Whether, under the bankrupt law (U. S. Rev. Stat. § 5057) which requires suits between assignees and adverse claimants to be brought within two years from the time when the cause of action accrued, a person claiming as purchaser at an assignee's sale can bring such action where the assignee himself has allowed two years to pass without doing so after the adverse claimant's assertion of title—*Q.*

Error to Isabella. (Hart, J.) April 26.—June 6.

EJECTMENT. Plaintiff brings error. Affirmed.

*H. H. Hoyt* for appellant. A bankrupt's right and interest passes entirely to his assignee: *In re Mebane* 3 N. B. R. 91; *In re Wayne* 4 id. 5; *Herndon v. Howard* 9 Wall. 664; and the latter's title dates from the beginning of the proceedings: *Mays v. Manufacturers' Bank* 4 N. B. R. 148; of which every one must take notice: *Hitchcock v. Sedgwick* 2 Vern. 156; *Collet v. De Gols* Cas. tem. Talbot 65; *Wickersham v. Nicholson* 14 S. & R. 118; and the bankrupt

himself can thereafter convey no title: *In re Lake* 6 N. B.
R. 542; *In re Gregg* 3 N. B. R. 131; *Exp. Vogel* 2 N. B.
R. 427; *In re Wynne* 4 N. B. R. 5; *Miller v. O'Brien* 9 N.
B. R. 26; *In re Grinnell* id. 29; *Davis v. Anderson* 6 N.
B. R. 147; an assignee can sell real estate: *In re McClellan*
1 N. B. R. 389; *Second Nat. Bank v. Nat. Bank of Newark*
11 N. B. R. 49; *Kelly v. Strange* 3 N. B. R. 8; but if the
bankrupt himself had no title the sale conveys none : *Ree-
ser v. Johnson* 10 N. B. R. 467; and if his title was
encumbered the sale is subject to encumbrances: *Meeks v.
Whatley* id. 498; *In re Salmon* 2 N. B. R. 56.

*Brown & Leaton* for appellee. A sale by an assignee in
bankruptcy gives no rights unless the statute under which it
was made was strictly complied with: *Platt v. Stewart* 10
Mich. 260; *Stilwell v. Swarthout* 81 N. Y. 112; *Knight v.
Cheney* 5 N. B. R. 305; *Johnson v. Baker* 38 Ill. 98; and it
is invalid as against adverse claimants who had no knowl-
edge or notice of the intended sale: *Bryan v. Major* 14 N.
B. R. 71; *Meeks v. Whatley* 10 N. B. R. 498; *Shaw v. Lindsey*
60 Ala. 344; *Stanley v. Sutherland* 16 Am. L. Reg. (N. S.)
299; *Gifford v. Helmes* 18 Am. L. Reg. (N. S.) 125 : 98 U.
S. 248: *Foster v. Ames* 2 N. B. R. 455; *Russell v. Phelps*
42 Mich. 380; *Aldrich v. Chubb* 35 Mich. 364; *Marshall v.
Knox* 8 N. B. R. 101; *Dean v. Chapin* 22 Mich. 277; the
limitation that suit should be maintainable by or against an
assignee, unless brought within two years after the declara-
tion and decree in bankruptcy, or after the cause of suit
arises, applies to all judicial contests between the assignee
and other persons, touching the property, or right of prop-
erty of the bankrupt transferable to or vested in the assignee
when the interests are adverse, and have so existed for two
years from the time when the cause of action accrued for
or against the assignee: *Bailey v. Glover* 21 Wall. 346.

COOLEY, J. The title which the plaintiff relies upon in
this case is the same which was in issue in the case of
*Wisner v. Wirth* 48 Mich. 291. The plaintiff claims under
a sale made to him by the assignee in bankruptcy of one

Willey, and the defendant s claim under a conveyance made by Willey after he became bankrupt but before the fact was known to the grantee, and also under sales made of the land for delinquent taxes. In *Wisner v. Wirth* the plaintiff was held to have failed in the formal proofs, but these are now supposed to be complete so as to present the whole merits.

Willey, it appears, filed his petition to be adjudged a bankrupt, September 14, 1871. In one of the schedules to his petition the land now in controversy was described as constituting a part of his assets. The adjudication of bankruptcy was made, and an assignee appointed, February 15, 1873. The assignee took no steps towards a sale of the lands for more than seven years, and in September, 1875, Willey made sale of them to defendant Brown, who bought in reliance upon the record title. On the third day of April, 1880, the assignee presented to the bankrupt court his petition for leave to sell the land at private sale. The petition recites that "your petitioner having no funds belonging to said estate in his hands, did not investigate the title of said bankrupt to said land and believing that said lands were of little value, paid no attention to them until recently, when application was made to your petitioner to purchase the right of said bankrupt in said lands. From examination of the records it appears that the lands have been sold for taxes to private parties for a number of years, beginning in 1867; that the right acquired by virtue of the sale of said lands for delinquent taxes is held by one party; in addition to such title has been obtained a deed from the bankrupt of said lands; that another party has, by virtue of a sale on execution, based upon a judgment obtained against said bankrupt before he was adjudicated a bankrupt, acquired a title to said lands; that the title to said lands is complicated in this manner, both parties claiming to own said lands by virtue of the title they have acquired thereto in the manner above stated; that, from inquiry and examination, your petitioner believes that the title which may be vested in him as assignee of said bankrupt is of but little value with-

out a lengthy litigation, and your petitioner has no funds in his hands to carry on such a litigation, or pay taxes that may be assessed thereon; that from information your petitioner sets forth that said lands were located for the pine timber that originally was on the land, which having been removed, the lands were not considered by the bankrupt of sufficient value to pay taxes thereon; that petitioner is offered one hundred dollars for the conveyance of the title which he holds as assignee of the said bankrupt to said lands, and upon information and belief your petitioner affirms that said sum is all the interest of said estate in said lands is worth, and that the acceptance of said offer, and the conveyance of said title to said lands accordingly, would be for the interest of the creditors of the estate of said bankrupt.

And your petitioner prays that an order may be made in this case authorizing your petitioner to sell said lands at private sale as he may deem advisable, but not at a less sum than one hundred dollars."

The prayer of the petitioner was granted and an order entered that the assignee be " authorized and directed to sell at private sale for the sum of one hundred dollars the following described real estate,"—describing it.

The assignee thereupon proceeded to sell to the plaintiff for the sum named, giving no notice to Brown, who only heard of the sale when the plaintiff went with his deed to assert title. Brown's evidence on the subject was as follows : " I am the man who bought the land from Willey, that is shown by a deed in evidence in this case. I can't exactly fix the date when I first had notice of the proceeding in bankruptcy in the United States court against Alfred Willey. It was some time after the deed from the assignee to the plaintiff was placed on record. I think the first knowledge I had was from the plaintiff himself. That is the first intimation I had of the existence of any such proceedings or any proceedings in the bankrupt court with Alfred Willey, bankrupt. I had no notice of any application to the district court to sell the land in controversy on the part of the assignee. I never heard of it until after the matter was put

on record here, and I think the plaintiff himself came to me and claimed title to the property. It was after the deed was put on record here."

Upon the showing thus made by the parties respectively the circuit judge was of opinion that the plaintiff had failed to make out a prima facie case, and directed a verdict for the defendants.

The grounds of supposed invalidity in the plaintiff's title are *first*, that the assignee had no authority to make sale of property, the title to which was in dispute, without first giving notice to the adverse claimants; and *second*, that all the authority he ever had to make sale was lost by lapse of time before the sale was actually attempted.

The first of these objections to the sale is made upon the provisions of § 5063 of Rev. Stat. of U. S. 1878, which provides that " whenever it appears to the satisfaction of the court that the title to any portion of an estate, real or personal, which has come into possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent or attorney, as the court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds received in place of the estate disposed of; and the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any court."

There has always been some question concerning the exact meaning of this provision. It seems to contemplate the seizure and sale, by the assignee, of the whole property, and the extinguishment of all title in the adverse claimant; but this, as was pointed out by Mr. Justice Clifford in *Knight v. Cheney* 5 Nat. Bank Reg. 305, would be quite beyond the power of any legislative body to provide for; at least in cases where the adverse party was in possession. But whether the sale contemplated is of the whole property, or only of the bankrupt's interest, there is no ambiguity in respect to the requirement of notice, which is imperative. And as the power of the assignee to sell and convey the

estate of the bankrupt depends entirely upon the statute, a sale and conveyance by him in any other mode than the one prescribed would be a mere nullity. This has been held in several cases where the defect in the proceedings consisted in the failure to comply with the requirement of notice in this section. *Shaw v. Lindsey* 60 Ala. 344; *Stanley v. Sutherland* 54 Ind. 339; *Meeks v. Whatley* 48 Miss. 337.

The doubt in this case arises upon the fact that the sale was ordered by the bankrupt court, and that the judge neither required notice of the application nor directed notice to the adverse claimant before the sale should be made. In making the order without previous notice, he must be understood to have decided that such previous notice was not essential; and it is to be observed that he ordered a sale, not of the whole property, but only of the bankrupt's interest therein; and it is not very obvious that an adverse claimant could have any right to be heard on the question of making such an order, or any privilege of resisting it. But the importance of his knowing that a sale was to be made is apparent; not only because he of all persons would be liable to become a bidder, but also because the bankrupt estate would be interested in having his competition with others. And if sale was ordered without express requirement of notice, it does not follow that the judge contemplated or intended that the sale should be so made, or that the order should be understood as permitting it. Counsel, when their petitions are granted, are allowed to draw up their orders themselves, and it is not expected that the personal attention of the judge will be called to all their details. When he grants the prayer of a petition, he has in mind only the general purpose to which he gives his assent; and he trusts to counsel to put the assent in due form, so as to make the order and the proceedings under it harmonize with the requirements of the law. If the law makes notice essential, it will not be understood that the court has assented to dispensing with it, even though the order as drawn up omits to incorporate the requirement.

In *Ex Parte Bryan*, 14 Nat. Bank Reg. 71, it appeared

that the register in bankruptcy had made an order for the sale " at public or private sale," of a disputed claim of the bankrupt upon his father's estate, and the assignee had made private sale for a small sum without notice to contestants.    Judge Hughes held that the register had no power to make the sale; but he also expressed the opinion, in the most positive terms, that had the sale been ordered by the court, it would, when thus made, be altogether null and incapable of ratification.    This opinion is entitled to great respect, and seems to us reasonable and sound.    And the wisdom of the requirement of notice is well illustrated by the facts of this case, in which the bankrupt's title to several hundred acres of land was sold for a merely nominal sum, when there is every reason to believe it would have brought a substantial price if the intended sale had been properly notified.

The other objection to the sale arises under Rev. Stat. U. S. 1878, § 5057, which provides that " No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."    As the assignee might have brought action against Brown at any time after the latter set up title, there is much reason for saying the case is within the statute.    See *Bailey v. Glover* 21 Wall. 342.    But it is not necessary to so decide on this record.

The judgment is affirmed with costs.

GRAVES, C. J. and CAMPBELL, J. concurred.